ANTHONY C. UCCI *vs.* HATHAWAY BAKERIES, INC.

MAY 27, 1949.

PRESENT: Flynn, C. J., Capotosto, Baker and O'Connell, JJ.

BAKER, J. This petition was brought by an employee

under the provisions of the workmen's compensation act, general laws 1938, chapter 300, to review his alleged decreased earning capacity. It is now before this court on his appeal from the entry of a decree denying and dismissing the petition.

It is undisputed that on March 12, 1945 the petitioner, an employee of the respondent company, sustained an injury by accident arising out of and in the course of his regular employment as route supervisor. A preliminary agreement for compensation for total incapacity, approved by the director of labor, was thereafter entered into by the parties. It contained the statement that the injury suffered by the petitioner was a "lumbo-sacral" strain caused by lifting a box of bread. Compensation was paid to the petitioner under the above agreement until June 18, 1945 when he returned to his usual work. He continued to be so employed until November 1945 when he left the respondent's service.

It appears from the evidence that at such time the petitioner and one of the driver salesmen under his supervision, who was then loading a truck, had an altercation which led to an exchange of blows. The petitioner testified that after some words the driver, who was not called as a witness, attacked him and he merely defended himself. The next day petitioner was called before his superiors and told in substance that he was demoted to the position of driver salesman and was given a specified route. The pay of a driver salesman was less than that of a route supervisor. The respondent's plant manager testified that the above action was taken because petitioner had become involved in a fight on the company's loading platform, which was strictly against the rules of the company, and also because his ability as route supervisor was not sufficient. At that conference petitioner stated that he could not act as a driver salesman because of the condition of his back, the amount of bending and lifting of heavy objects involved in the duties of that position, and the frequent

necessity of getting on and off trucks. He thereupon ceased working for the respondent without attempting the job offered by it.

For some time thereafter he made no serious attempt to obtain work. Eventually, however, he registered with the United States Employment Service and was sent to a hardware store in West Warwick, but he did not obtain employment, apparently because of the condition of his back. Thereafter he tried unsuccessfully to obtain work as a plumber's helper and he did work two half days with a printer but was unable to continue as his back did not permit the necessary bending and handling of heavy bundles of paper. He testified that he also looked for jobs in other places.

The evidence shows that after his accident the petitioner was treated at reasonably frequent intervals up to the latter part of June 1946 by a chiropractor who, however, had retired at the time of the hearing in the superior court and did not testify. In September 1946 he consulted an osteopathic physician who treated him thereafter continuously up to the time of such hearing and who testified therein. After the petitioner ceased working for the respondent in November 1945 he was examined, at the request of its insurance carrier, by a doctor who did not testify. Also on November 26, 1946 he was examined by an impartial examiner appointed by the director of labor, but on objection of the respondent the trial justice did not permit the examiner's report to be introduced in evidence.

Several findings of fact were contained in the final decree appealed from. Some of them are specifically attacked by the petitioner including the following: "(3) That the petitioner returned to work June 18, 1945 and thereafter worked steadily at his regular job as a route supervisor, without difficulty, until in November, 1945. * * * (6) That the respondent acted in good faith in demoting the petitioner and was not thereby engaging in any subterfuge to

get rid of the petitioner because of any incapacity of his due to any injury to perform his work. * * * (8) That by his own conduct the petitioner demonstrated his ability between June and November of 1945 to perform all the duties of his employment, including that of driver salesman and to earn full weekly wages. * * * (10) That the injury of March 12, 1945 has not resulted in any incapacity for work of the petitioner since June 18, 1945."

Speaking generally, the petitioner admits that he is able to do light work of a character which does not require bending or lifting heavy objects but contends that he is partially incapacitated because of his accident. The respondent, on the other hand, argues that the petitioner is not now suffering any incapacity for work by reason of the injury he received March 12, 1945.

Upon consideration we are of the opinion that there was legal evidence by way of reasonable inferences from all the existing facts and circumstances to support the sixth finding. Such being the case under the pertinent provision of the workmen's compensation act and our decisions thereunder that finding becomes conclusive. G. L. 1938, chap. 300, art. III, §6. The other three findings in issue relate to the vital question of the extent of the petitioner's capacity to perform his usual work.

On this issue there was his own testimony describing the injury to his back and showing that at the time of the hearing he was receiving medical attention for his back which was still painful and that at times he had worn a belt. There was also the testimony of the osteopathic physician who was attending the petitioner and who first saw him September 25, 1946, about ten months after he had left respondent's employment in the circumstances hereinbefore mentioned.

The doctor made the following diagnosis: "At the time he came to me I made the diagnosis of right sacro iliac strain, and also sciatic strain; probably chronic. He also had a scoliosis of the spine, slight curve to the left." He

also testified that the petitioner improved under manipulative therapy which was being given on an average of from once a week to once in ten or twelve days, and that one of his legs was about one-half inch shorter than the other due probably to the accident. To remedy this condition the doctor had prescribed a certain type of shoe with a lift in the heel in order to equalize the strain on his back. In respect to his ability to work and the extent of his disability the doctor gave the following opinion: "A. He could engage in any sedentary occupation in my opinion. I wouldn't suggest that he engage in anything where he has any lifting, or bending. That seems to be the thing that always causes his downfall. Q. In your opinion he is partially disabled? A. I would say he was." The respondent introduced no medical evidence.

However, it also appeared that after the petitioner had returned, on June 18, 1945, to his usual work with the respondent as a route supervisor there were occasions when he performed the duties of a driver salesman while one of the regular drivers was on vacation or for some cause did not work. A witness for the respondent gave the following testimony: "Our records show from June 1st until November 1st Mr. Ucci at seven different weeks in that period fulfilled the duties of salesman while that man was on vacation." The petitioner admitted that after he returned to work he had at times driven a truck on a route but that he could not remember how frequently this occurred and that usually the respondent provided an extra driver for such an occasion. He also stated that in an emergency it was the duty of the route supervisor to act as driver salesman. He further testified in substance that when he was required to so act he followed the advice of the chiropractor, who was at the time giving him treatments, and took things easy.

It seems clear from the rescript of the trial justice that from the above evidence, which is here only briefly

outlined, he drew the inferences upon which were based his findings of fact 3, 8 and 10 to the effect that the petitioner was not then incapacitated in any degree by the accident of March 12, 1945 from performing his usual work. The question is whether in the circumstances the inferences were reasonable, thus providing legal evidence to support such findings. Upon consideration we have come to the conclusion that they were.

When the petitioner, after his accident, returned to work with the respondent he went back at his previous rate of pay to his regular position of route supervisor which apparently he satisfactorily filled, even though his back was not normal physically and was being treated. It clearly appears from the evidence that between June and November 1945 the petitioner acted without complaint or objection as a route supervisor, the position he was holding when injured, and was able to carry out all the duties of that position even including his acting at frequent intervals as driver salesman when called upon to do so by reason of the happening of some emergency. The issue is whether he was able to perform his usual work as route supervisor and not whether he was partially incapacitated from doing the heavier work of driver salesman.

The respondent relies on *Pearl* v. *Builders Iron Foundry*, 73 R. I. 304, as supporting its contentions herein. Upon consideration we are of the opinion that it governs the instant case. While the facts in that case are not precisely similar they bear a strong resemblance to those in the instant case and the basic questions involved in both are substantially the same. In that case we affirmed a decree of the superior court denying compensation under a petition to review an agreement where it appeared that the petitioner, after being injured, returned to his regular job with the same employer and thereafter for upwards of three months continued to perform satisfactorily his usual work until he voluntarily left to take a job that would pay him better wages. In the *Pearl* case we used

the following language at page 308: "In our opinion there is evidence from which the trial justice could reasonably infer that the petitioner had not proved that he was unable to perform his usual work or that his earning capacity had been decreased, in whole or part, as a result of the accident. The burden to establish these facts by credible evidence of probative force was upon the petitioner."

In the instant case in our judgment there was evidence from which the trial justice could reasonably draw, as he did, a similar inference as to the petitioner's capacity to perform his usual work. Such being the case, the petitioner here has failed to establish by credible evidence of probative force, as was his burden, that because of the accident his earning capacity was decreased in whole or in part at the time of the superior court hearing. It is well settled that under our workmen's compensation act an employee is entitled to compensation only for loss of earning capacity and not for mere physical disability that does not incapacitate him. *Wareham* v. *United States Rubber Co.*, 73 R. I. 207; *Weber* v. *American Silk Spinning Co.*, 38 R. I. 309. In the above circumstances he would not be entitled under the petition before us to a finding of partial incapacity. See *Walsh-Kaiser Co.* v. *Kooharian*, 72 R. I. 390. Moreover, the fact that he did practically no work between the time he left the respondent's employ and the hearing in the superior court is not in the circumstances satisfactory or sufficient proof to establish his diminished earning capacity, since the testimony in that connection is sketchy, vague, and inconclusive and does not show an attempt on his part in good faith to obtain during that period a job that he was capable of doing.

As to the circumstances under which the petitioner ceased working for the respondent, the evidence reveals in substance that after an altercation with one of the driver salesmen the petitioner was removed from his position as route supervisor. The respondent at once offered him a

job as driver salesman which he declined because in his opinion it required too much bending and lifting, and thereupon he left the respondent's employment. As already pointed out the trial justice found that in demoting the petitioner for cause respondent acted in good faith and was not engaged thereby in any subterfuge to relieve itself of his services or of paying compensation. If the petitioner had proved that there was any bad faith or fraudulent conduct in his discharge or demotion in order to terminate his compensation such acts should properly be given consideration in arriving at a decision of the case. However, nothing of that kind was shown by him. On the contrary for all that appears from the evidence he would still be doing his usual work except for his own violation of the company's rules. The effect of petitioner's discharge for cause, therefore, was substantially similar to the voluntary leaving of his employment by the petitioner in the *Pearl* case, *supra*.

The respondent herein nevertheless of its own volition offered the petitioner another position which he saw fit to refuse. In our opinion the respondent was not required to provide the petitioner with another job after it had removed him for cause from the one he had been filling, and in so acting it did not prejudice its rights. The issue remained whether petitioner had satisfied the burden on him to show that he was incapacitated from performing his usual work of route supervisor, and not the work of driver salesman. In the circumstances of this case we find nothing in the manner of his discharge or demotion by the respondent which aids the petitioner's position herein.

The petitioner's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Michael De Ciantis,* for petitioner.

*Worrell & Hodge, Lee A. Worrell,* for respondent.